## PAUL v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
December 3, 1929.

No. 5815.

James Wickersham and Henry Roden, both of Juneau, Alaska, for appellant.

Howard D. Stabler, U. S. Atty., of Juneau, Alaska.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. This is an appeal from an order of the District Court of the Territory of Alaska, Division No. 1, adjudging the appellant guilty of contempt of court and sentencing him to pay a fine of $75 and to stand committed in the federal jail at Ketchikan, Alaska, until said fine should be paid, not to exceed 35 days, and also to pay a fine of $100 and stand committed in the federal jail at Ketchikan, Alaska, until said fine should be paid, not to exceed 50 days. The appellant invokes the jurisdiction of this court upon the ground that the order deprives him of his liberty and his property without due process of law. A motion to dismiss was interposed by the appellee on the ground that this court has no jurisdiction. The appellant did not formally present to the trial court his objections to the proceedings on the ground that his constitutional rights were invaded, but, in view of the fact that he was adjudged guilty of contempt without ever having been informed of the nature of the charge against him or of the fact that contempt afterwards found by the court to have been committed was being investigated or tried by the trial judge, and in view of the further fact that the portion of the order adjudging contempt, which related to the second alleged contempt, was made without any investigation or purported investigation of the charge, without notice to the appellant, and in his absence, the matter of the constitutionality of the proceedings was sufficiently invoked in the assignments of error presented to the trial judge in connection with the petition for appeal to present to the trial court and to this court on appeal the constitutional question relied upon by the appellant. The order adjudging the appellant guilty of contempt contains a recital of the facts upon which the order is predicated, and the procedure in the matter. In addition to that, attached to the order as an exhibit, is a transcript of the proceedings had in the trial court. This order, with its exhibits, is incorporated in the bill of exceptions settled by the trial judge and presented to this court. These facts cannot be set out in the opinion without unduly extending it, but the salient features are as follows:

Maxfield Dalton, an Indian fisherman, had been fined $400 by the United States commissioner Bagley at Craig for an alleged violation of the fishing laws of Alaska. This offense was punishable by fine or imprisonment and by forfeiture of the boat and fishing tackle involved in the offense. Section 6, Act of June 6, 1924 (43 Stat. 464 [48 USCA § 226]). After the imposition of the fine, the appellant, an attorney at law living at Ketchikan, Alaska, was employed by Dalton through the agency of one Peratovich, the owner of the boat of which Dalton was master, used at the time of the alleged violation of the fishing laws. In pursuance of that employment, on the 6th of February, 1928, the appellant mailed to Justin W. Harding, recently advanced from the position of United States attorney to that of United States District Judge, a petition for writ of review. This petition contained the following statement, upon which the first judgment of contempt is predicated:

"That the plea of guilty was forced from your petitioner and was not a voluntary plea, so that he entered the said plea under a threat of the United States Attorney that expensive and dilatory proceedings in admiralty would be started if the said plea was not entered; that your petitioner offered to put up a bond to secure the release of the said boat during the determination of an admiralty suit, which right was refused; so he paid the fine under protest, informing the Court at that time that he did protest against the entire proceedings and would ask for a review by the district court."

To this petition, in conformity with the law of Alaska (chapter 55, §§ 1374–1383, Compiled Laws of Alaska 1913, and section 1376) was attached the certificate of appellant certifying: "I have examined the proceedings and the judgment in the case complained of above and believe the same is erroneous as alleged in the petition."

This petition was accompanied by a letter dated February 6, 1929, calling attention to the inclosed bond and the sureties thereon and stated as follows: " * * * Inasmuch as signing the order allowing the writ is, in my opinion, not a judicial act, but merely ministerial, I am requesting that you sign same, in order that the matter may come up before Judge Hill next March. Thanking you for your courtesy, I am, Yours respectfully, William L. Paul."

The order recites that, "whereupon the court ordered the said petition filed and directed that the matter as to whether or not the order asked would issue be set for hearing at the term of court called for Ketchikan to begin February 18, 1929, and directed that the United States Attorney and counsel for petitioner be so advised. That thereafter and on the 23d day of February, 1929, said matter came on for hearing in open court; and it appeared to the court on said date in open court and in the immediate view and presence of the court aforesaid hearing and proceeding as aforesaid, when said matter came on for hearing that said William L. Paul asked the court for leave to amend said petition by striking out 'portions under number three of line two, all of lines three, four and a portion of line five under (paragraph three of said petition) number three.' "

This matter, it may be observed parenthetically, is the matter which the trial court adjudged to be contumacious. We continue to quote from the order as follows:

"Whereupon the court stated to said William L. Paul: 'You allege certain new matter in this petition, which is under your oath here as an attorney, which I have reason to know is not correct,' whereupon the following occurred:

"Mr. Paul: Of course, I wish to state these are not statements of fact, but my opinion concerning errors which were made, on the strength of which I am asking the record come up from the commissioner's court.

"The Court: The complaint is sworn to by you as attorney."

There is no showing in the order adjudging contempt that at any time during the proceedings the appellant was informed in any manner that the court was considering the question whether or not he is guilty of contempt. His client was called to the witness stand, as appears by the bill of exceptions, and questioned in the following manner:

"Mr. Paul: Of course my statement is entirely information that came to me upon a visit I made to Klawock; if my memory serves me right I talked to Maxfield Dalton, Bob Peratovich, W. J. Chuck and others.

"The Court: Are you ready to put him on the stand to show he gave you information contained in any of these allegations?

"Mr. Paul: Am I required to? I think that is on the Court's responsibility, not mine.

"The Court: You are not willing to put him on?

"Mr. Paul: I am willing he should take the stand and he be examined.

"The Court: You are willing he take the stand and be examined on that by the United States Attorney?

"Mr. Paul: I am willing he be examined, but I think the Court might set another time —as long as the proceeding is taking this direction—for me to prepare myself.

"The Court: He is here and can testify as well now as any other time.

"Mr. Paul: Yes, but there are other people interested.

"The Court: Do you object to putting him on?

"Mr. Paul: No, I am not objecting.

"The Court: If you don't object, we might as well put him on the stand.

"Mr. Paul: That is for the Court.

"(At this point Maxfield Dalton was sworn by the Clerk.)

"Mr. Paul: If the Court will wait just a minute please—I would like to say this: The correspondence in connection with this case is not in this file and I think it is in the office,

and I would like to have the proceeding continued because it will be necessary for me in cross-examination to get the correspondence because I have written him letters and sent him in papers.

"The Court: How long will it take to produce those?

"Mr. Paul: I think I can produce them without undue delay.

"The Court: By fifteen minutes to three?

"Mr. Paul: I think—as soon as the jury—I think the jury is ready to return a verdict in the case before the court and as soon as that is over I will go get my file.

"The Court: You think you can get them at fifteen minutes to three?

"Mr. Paul: Sometimes as soon as—

"The Court: At fifteen minutes to three we will resume.

"(At 2:25 p. m. recess was taken until 2:45 o'clock p. m., when the hearing was resumed with all parties present.)

"The Court: Are you ready to proceed?

"Mr. Paul: I am ready."

It will be observed at this juncture that the matter before the court as recited in the order was the petition of Maxfield Dalton for writ of review. Dalton was called, and, instead of being examined by the appellant, his attorney, was examined by the United States attorney on direct examination. This rather extensive examination was with relation to the proceeding before the United States commissioner, and particularly with relation to the facts stated in the petition and concerning the statements made by Mr. Dalton to the appellant, his attorney. At the conclusion of the testimony of this witness, according to recitals of the order adjudging contempt, "Mr. Paul asked if he would be allowed to call a witness, and was allowed to do so. Mrs. William L. Paul was thereupon called as a witness by William L. Paul; a copy of her testimony being attached hereto, marked Exhibit 4 and made a part hereof.

"Whereupon the Court asked William L. Paul if he had any statement to make, to which Mr. Paul replied as follows:

" 'I have not, your Honor. I made my offer and have done my best to try and convince the court the proceedings were done in good faith and, I thought, under good authority'—after which the following occurred:

"The Court: You don't care to make a statement yourself, as to what occurred; as to what basis you have for filing these?

"Mr. Paul: I am willing to take the stand and testify.

"The Court: You may if you care to."

Whereupon appellant testified in the matter.

The order adjudicating contempt as to the first charge is based entirely upon the proposition that the allegations of the petition above referred to were untrue and known by the appellant to be untrue. The order recites that the appellant misbehaves in his office in the capacity of an attorney at law, as a member of the bar and court as aforesaid, and violated his duty of being honest, fair, and truthful in his statements to the court. He was therefore adjudged guilty of contempt.

As we are considering the constitutional aspect of the case, we will not quote from the record the evidence in regard to the truth or the untruth of the facts stated in the petition. It is apparent that, at the time the petition was mailed to the judge and the application thus made for a writ of review, the offense, if any, had then been committed. The presentation of the matter in open court was at the instance and upon the insistence of the judge, and at that time the appellant made every effort to withdraw from the consideration of the court a portion of the petition subsequently determined to be objectionable. The judge not only invited the presentation of the matter, but prevented appellant from withdrawing it. The rule in regard to the contempt proceedings has been frequently considered by the Supreme Court, and in Cooke v. United States, 267 U. S. 517, 537, 45 S. Ct. 390, 395, 69 L. Ed. 767, a somewhat similar situation was under consideration by that court. The court said:

"Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. See Hollingsworth v. Duane, 12 Fed. Cas. 359, 360 [No. 6,616]; In re Stewart, 118 La. 827, 43 So. 455; Ex parte Clark, 208 Mo. 121, 106 S. W. 990, 15 L. R. A. (N. S.) 389.

"The proceeding in this case was not conducted in accordance with the foregoing principles. We have set out at great length in

the statement which precedes this opinion the substance of what took place before, at, and after the sentence. The first step by the court was an order of attachment and the arrest of the petitioner. It is not shown that the writ of attachment contained a copy of the order of the court, and we are not advised that the petitioner had an exact idea of the purport of the charges until the order was read. In such a case, and after so long a delay, it would seem to have been proper practice, as laid down by Blackstone (4 Commentaries, 286), to issue a rule to show cause. The rule should have contained enough to inform the defendant of the nature of the contempt charged. See Hollingsworth v. Duane, 12 Fed. Cas. 367, 369 [6,617]. Without any ground shown for supposing that a rule would not have brought in the alleged contemnors, it was harsh under the circumstances to order the arrest."

See, also, Re Savin, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150.

It cannot be said in the case at bar that under the circumstances there was a contempt of court committed in open court which would authorize the summary imposition of a penalty. Although the court did not advise the appellant that his conduct was under investigation, the court did in fact hear testimony and predicate a fine of contempt upon the testimony taken in open court, which was ostensibly taken for the purpose of determining whether or not the writ petitioned for should be issued.

We conclude that the order so far as based upon the first finding of contempt was entered without due process of law. The second finding of contempt is based upon an entirely different set of facts relating to the same subject-matter. It appears that, after the court had adjourned on February 25th, the appellant, for and on behalf of his client, without obtaining leave of court so to do, filed Maxfield Dalton's affidavit of prejudice. This affidavit is attached to the order adjudging contempt. After stating that the affidavit had been made to conform to section 25 of 28 USCA, and section 1539 of the Compiled Laws of Alaska 1913, it alleged "that the said Hon. Justin W. Harding was the United States Attorney in active control of that office at the time when the proceeding sought to be reviewed was instituted, prosecuted, and concluded, and that as such United States Attorney, he was one of the attorneys interested in the prosecution and result of said case."

It also alleged that on the 21st day of February, the judge, in a conversation with the appellant, "referred to a certain resolution passed by the Alaska Native Brotherhood at its last convention at Sitka, Alaska, during the month of November, 1928, which resolution criticized the office of the United States Attorney which he then held, that he said that this resolution had been filed with the United States Senate Committee on Judiciary; and that the said Hon. Justin W. Harding further said that he resented the said resolution, that the facts stated therein were not true, and that he held affiant's attorney, William L. Paul, responsible for the same; that the said Hon. Justin W. Harding then referred to the aforesaid petition of this affiant for a writ of review and stated that the subject matter of the aforesaid resolution was repeated in the said petition for a writ of review."

It also stated that on the 23d of February, 1929, when the petition for writ of review came on for hearing before said judge, the judge had stated before the hearing, " 'I have reason to know these statements (referring to the contents of said petition) are untrue;' that by reason of the above declaration this affiant believes that the said Hon. Justin W. Harding might be a material witness in this proceeding."

Among the grounds of adjudicating the appellant in contempt was that the allegations of said affidavit of prejudice, except paragraph I thereof, are excessive and unnecessary in order to obtain the relief requested in said affidavit of prejudice, " * * * and were wilfully false and untrue in this: that said affidavit of prejudice in which said William L. Paul, acting as attorney as aforesaid stated that, 'The said Hon. Justin W. Harding, during the course of said hearing and before any evidence was heard, said, "I have reason to know these statements (referring to the contents of said petition) are untrue," ' whereas, the court finds what was in truth and fact stated was as follows: 'You allege certain new matter in this petition, which is under your oath here as an attorney, which I have reason to know is not correct,' which statement was reported by the reporter and made part of the record of the proceeding; all of which said William L. Paul then and there well knew; and said allegations, excepting the allegations of said paragraph one of said affidavit of prejudice were then and there made, and caused to be made, and filed in said proceeding, by the said William L. Paul, with the contemptuous and insolent intent and purpose on the part of the said William L. Paul of further discrediting and embarrassing said judge in his official capacity

as judge of said court, and in his official functions and administration of said court and with the intent and purpose of impairing the authority, honor, and dignity of the court and of the said judge thereof."

It is sufficient for the purpose of this appeal to say that the affidavit was not filed in open court and that the summary order adjudging the appellant guilty of contempt was an unlawful attempt to deprive him of liberty and property without due process of law for the reasons hereinbefore stated.

The affidavit of prejudice and of interest made by the appellant's attorney was a proper one. If the facts therein stated were untrue, the fact that they were untrue is not a proper basis for adjudging the contempt, nor is the fact that the affidavit contained more than was necessary to accomplish the change of judges a ground for punishment or criticism. It is the duty of the appellant to file such an affidavit, and, if he is to be criticised at all in the matter, it would be for his failure to file such an affidavit when the application for writ was called up before a judge who it appears from the record had been an attorney in the case.

Without discussion of the other charge of contempt and the findings of the court adjudging contempt, the trial judge seemed to have entirely overlooked the fact that the petition for review had been submitted by the appellant to his client and had been returned to him by the client for filing. This amounted to a direct representation from the client to the attorney that the facts were as stated in the petition. It is apparent also, from the record, that the terms used in the paragraph under consideration were wholly foreign to the vocabulary of appellant's client. He knew a good deal more about fishing than he did about judicial procedure. He confused the fish commissioner with the United States commissioner, and testified under oath that he had never before been before the United States commissioner, and immediately admitted that he had been as soon as the phraseology of the questions was changed. It seems apparent from the consideration of the record that the trial judge confused the question of the responsibilities and duties of the attorney to the court by reason of his relation to the court and the question of whether or not as an officer of the court he had been guilty of contempt. It certainly would be an innovation in the law if an attorney were to be summarily punished for contempt whenever a statement made by him on behalf of his client, after investigation, turned out to be untrue.

We conclude that the order adjudging the appellant guilty of contempt of court was made in violation of his fundamental constitutional right to be heard and not to be deprived of his property or liberty without due process of law.

Judgment reversed.