Michael C. CIRAOLO, Petitioner-Appellant,

v.

Frank I. MADIGAN, Sheriff of Alameda County, Respondent-Appellee.

No. 24475.

United States Court of Appeals, Ninth Circuit.

May 28, 1971.

◆

Andre T. La Borde (argued), Asst. Public Defender, John D. Nunes, Public Defender, Alameda County, Oakland, Cal., for petitioner-appellant.

Robert R. Granucci (argued), Deputy Atty. Gen., Evelle J. Younger, Cal. Atty. Gen. Albert W. Harris, Jr., Asst. Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before JERTBERG, MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

Michael C. Ciraolo, an assistant public defender of Alameda County, California, was adjudged guilty of contempt, fined, and sentenced to jail by Judge Kroninger of the Alameda County Superior Court. The conviction followed the filing of an affidavit of prejudice in support of a challenge of Judge Kroninger for cause by Mr. Ciraolo while representing a defendant in a murder prosecution. The Supreme Court of California denied a petition for writ of habeas corpus. In re Ciraola, 70 C.2d 389, 74 Cal.Rptr. 865, 450 P.2d 241 (1969). Mr. Ciraolo then filed an application for habeas corpus in federal district court. He asserted that Judge Kroninger had convicted and sentenced him without adequate notice, hearing, or counsel, in violation of the Due Process Clause of the Fourteenth Amendment. The district court denied the petition. Mr. Ciraolo appealed.

I

A summary of the general principles governing this appeal will provide a helpful background to the statement of facts. All that is required for this purpose may be found in a single paragraph of Justice Black's opinion in In re Oliver,

333 U.S. 257, 275–276, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948):

"Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case [Cooke v. United States, 267 U.S. 517, 45 S. Ct. 390, 69 L.Ed. 767 (1925)] requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.[1] The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out."

II

The events leading to Mr. Ciraolo's contempt conviction began in a criminal proceeding before Judge Kroninger involving a defendant (Mr. Dodge) represented by Mr. Newhouse, one of Mr. Ciraolo's fellow attorneys in the public defender's office.

On July 3, 1968, Mr. Newhouse filed a peremptory challenge to Judge Kroninger under section 170.6, California Code of Civil Procedure, stating that he did

---

1. In re Green, 369 U.S. 689, 691–692, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962); *see* Holt v. Virginia, 381 U.S. 131, 136, 85 S. Ct. 1375, 14 L.Ed.2d 290 (1965); Ungar v. Serafite, 376 U.S. 575, 589 n. 9, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *cf.* In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

so at the request of defendant Dodge. Judge Kroninger rejected the challenge on the ground that it was untimely because it should have been submitted to the presiding judge before the case was transferred to Judge Kroninger for trial.[2]

A jury was selected and sworn and the case against defendant Dodge set for trial on July 5.

When court convened on July 5, Judge Kroninger noted that defendant Dodge had not been personally present when his case was assigned for trial by the presiding judge and that this procedural error probably undercut Judge Kroninger's ruling that the peremptory challenge was untimely. Judge Kroninger suggested that if Mr. Newhouse would waive any irregularities that might have occurred and stipulate to the declaration of a mistrial, Judge Kroninger would return the case to the presiding judge for reassignment. Mr. Newhouse declined. The Judge then asked Mr. Newhouse if he wished to withdraw the peremptory challenge. Again Mr. Newhouse declined.

Judge Kroninger then raised the question whether a unilateral declaration of a mistrial would prevent reprosecution of defendant Dodge on the ground of double jeopardy. The prosecuting attorney indicated that it probably would. The Judge responded that, if so, it would be "an anomolous situation" because the error "was either participated in, or at least acquiesced in, by counsel for the party complaining." He pointed out that when the case was called before the presiding judge, "counsel for the defendant permitted it to be called in his absence"; that when the presiding judge proposed to assign the case, "no protest was made"; that when the presiding judge assigned the case, "counsel for the defendant permitted the execution of that order without protest"; and that only when the case reached Judge

Kroninger for trial was the peremptory challenge filed. He again remarked that it was "anomolous" that "counsel for the defendant should be able to permit that error to occur and then stand on this dilemma that's presented," although it might be "that even though counsel for a party may participate, the client may stand on it and claim jeopardy and obtain the benefits of that error his own attorney participated in."

After hearing further from the prosecuting attorney and Mr. Newhouse, Judge Kroninger again declared that "it would seem anomolous * * * that counsel for a party may either actively or tacitly participate in or permit error, and yet rely on it to claim once in jeopardy or claim any other benefits." He went on to indicate that there was "a strong suspicion, at least," that the peremptory challenge "was suggested by counsel, and in that case it would be even more reprehensible to permit counsel to stand by and wait until the matter has been assigned [for trial] before making that suggestion." Finally, Judge Kroninger stated that the defense of double jeopardy should not be available when a mistrial is declared for the defendant's benefit, "to procure for him privileges which * * * he was not able to exercise because of error committed by the [presiding judge] and neglect on the part of his own counsel."

The exchange ended when the prosecuting attorney offered to accept defendant Dodge's guilty plea to a lesser included offense.

Five days later, on July 10, in the course of representing a defendant (Mr. Banks) in another criminal proceeding, Mr. Ciraolo filed his personal affidavit in support of a challenge of the trial judge, Judge Kroninger, for cause under subdivision 5 of section 170, Code of Civil Procedure. The affidavit recited that Judge Kroninger had "stated on July 5, 1968 that the Public Defender of

2. Judge Kroninger also expressed the view that section 170.6 was "violative of both state and federal constitutional rights

which should be enjoyed by trial judges as persons."

Alameda County and his Office are incompetent * * * and due to [that statement] the Court is prejudiced against the defendant's counsel and affiant believes that the defendant cannot have a fair and impartial trial before said judge." Judge Kroninger filed a declaration in response denying that he had ever made the statement "or any words to such effect."[3]

A hearing was held on the challenge for cause on the following day before another judge of the Superior Court, Judge Emerson. Mr. Newhouse testified to Judge Kroninger's remarks on July 5 as reflected in the transcript and outlined above. He testified, however, that, in addition to suggesting that the attorneys in the public defender's office had acquiesced or participated in error and had been negligent, as reflected in the transcript, Judge Kroninger had also said, in substance, that they were incompetent.

On cross-examination Mr. Newhouse was asked if Judge Kroninger had used the exact words attributed to him in Mr. Ciraolo's affidavit, namely, "That the Public Defender of Alameda County and his Office are incompetent." Mr. Newhouse responded, "No, he never stated those words, but I would like to explain that answer. The sense of the proceedings which I imparted to Mr. Ciraolo

were those words." Mr. Newhouse further testified that the statement in Mr. Ciraolo's affidavit "was my impression of the remarks made to—in court to me" and that he had passed them on by word of mouth to Mr. Ciraolo.

No other witnesses were called. Judge Emerson ruled that Judge Kroninger was not disqualified. The grounds for the ruling are far from clear, but Judge Emerson did expressly state that he refrained from "passing on the credibility of either Mr. Newhouse or Judge Kroninger."[4]

The case proceeded to trial, and defendant Banks was convicted.

On August 5, defendant Banks appeared for sentencing, represented by the public defender, Mr. Nunes. After a continuance to Friday, August 9, was agreed upon, the following colloquy occurred:

"THE COURT: While you're here, Mr. Nunes, I would like * * * to call [to] your attention, if you are unaware of it, that an affidavit which appears in the file in this case was executed, prepared and executed by one of your deputies, Mr. Ciraolo, who tried this case, and I wonder if you would be interested in asking that this be withdrawn from the file at this time?

In the first place, I think the Declaration—well, I'll withdraw that.

I think the testimony does not show that Judge Kroninger made the statement attributed to him, and in the second place, I feel that his denial under penalty of perjury that he made that statement or any statement to that effect is supported by the evidence. It is true that the Transcript indicates that there was some discussion off the record, but what Transcript there is, of course, contains no reference to any such statement by Judge Kroninger.

I am not sure exactly what kind of ruling I should make in this case but in order that I may effectuate what I wish to do, I will rule that the challenge is disallowed or is denied, whichever language is proper. And I will further find that Judge Kroninger is not disqualified to try the case."

---

3. Judge Kroninger further declared "that if he did hold the view attributed to him by the Public Defender, such view would not work to the prejudice of any party represented by the Public Defender but would, on the contrary, result in affiant's taking particular care to see that all of such client's rights and interests were protected in any case in which affiant should preside."

4. "THE COURT: I won't require argument.

There is, giving both Mr. Ciraolo's Affidavit and Judge Kroninger's Declaration their full effect, a conflict in the evidence, of course. However, there is more to the matter than simply a direct conflict in testimony between an attorney and a Judge. And I want to make it clear that in making this ruling I'm not passing on the credibility of either Mr. Newhouse or of Judge Kroninger.

MR. NUNES: Well, may I talk to him about it and have him communicate with you?

THE COURT: Well, I would like to have him here Friday. You, of course, are free to be here if you wish, but I would like Mr. Ciraolo to be here Friday * * * I wish you would speak to him about it and see what he thinks should be done in that connection.

MR. NUNES: I shall, your Honor."

Mr. Ciraolo appeared before Judge Kroninger with defendant Banks on August 9 at the time set for sentencing. Defendant Banks was sentenced.

Judge Kroninger then said ot Mr. Ciraolo, "There is one other thing I feel obliged to take up," namely, "the filing by you of an affidavit under oath declaring that I had made certain statements."

Judge Kroniger stated that he was satisfied that a charge of perjury would be appropriate but had decided to dispose of the matter as a contempt. He then said that it would be unnecessary and inappropriate in the circumstances to file an affidavit regarding the nature of the conduct, or to issue an order to show cause and a warrant of apprehension, as required by California statute in non-summary contempt proceedings (see Code of Civil Procedure § 1212), but that he wished to give Mr. Ciraolo "an opportunity to make any showing by way of production of evidence that you might wish to make."

Mr. Ciraolo responded that he had filed the affidavit in good faith, in reliance upon information from Mr. Newhouse, but had inadvertently omitted the words "upon information and belief." He added that "there was no personal antagonism upon my part or any disrespect for this Court" and that he "felt at that time * * * that if the Court did entertain any such view against our

office, it would be to the detriment of my client." Mr. Ciraolo "personally apologize[d] to the Court for any inference the Court may have drawn as a personal attack," and stated, "I feel since I acted in good faith in what I understood the law to be, I would only ask that the affidavit be amended to read 'information and belief' and let it stand."

Judge Kroninger again inquired whether Mr. Ciraolo wished to present evidence.

Mr. Ciraolo replied that he did not consider summary proceedings proper and was not prepared to present evidence at that time. He stated, "if the Court wishes to bring contempt charges, I would like to have a date set for those charges and have a hearing on that matter" before a different judge.

After an extended exchange, Judge Kroninger found Mr. Ciraolo guilty of contempt and imposed sentence of three days' confinement plus a $200 fine or ten additional days in jail.

Mr. Ciraolo's conviction rested upon two inferences that Judge Kroninger drew from the circumstances.[5] At the hearing Judge Kroninger stated them as follows: first, "that the declaration was wilfully made by you with knowledge on your part that you did not know the facts, and very possibly with knowledge that the facts were not as you represented them"; and, second, "that the motion which you made was merely one step in a great number of steps calculated to simply delay and obtain a postponement of the trial of the matter, and such motive, of course, is unworthy." Judge Kroninger's order of contempt combined the two findings as follows: "that in fact Michael C. Ciraolo did not in good faith believe the truth of his assertions but did in fact use such affidavit and the disqualification motion simply as one of a number of sequential efforts to obtain continuances."[6]

5. Judge Kroninger also noted that Mr. Ciraolo's affidavit purported to reflect Mr. Ciraolo's personal knowledge when admittedly it did not. It is clear, however, that this was not the basis for the conviction.

6. The Supreme Court of California reflected the same understanding of the findings

## III

We hold that these findings underlying Mr. Ciraolo's conviction and sentence were not based upon the trial court's personal perception and knowledge; and that due process therefore required that they be arrived at only after an evidentiary hearing held on reasonable notice and with the aid of counsel, and not summarily, as they were here.

As Justice Black pointed out in the passage from In re *Oliver* quoted at the outset, two factors must be present to justify the extraordinary departure from due process norms involved in determining that an accused person is guilty of an offense, and depriving him of liberty and property, without notice of the charges or an opportunity to present evidence in defense or mitigation.

The first of these factors is that the conduct must be so disruptive of the court's business that immediate suppression is necessary "to prevent 'demoralization of the court's authority' before the public." In re Oliver, *supra*, 333 U. S. at 275, 68 S.Ct. at 509.[7] That is said to be the primary requirement for summary punishment of contempt, for "the need for immediate penal vindication of the dignity of the court created" this exception to the normal requirements of due process. Cooke v. United States, *supra*, 267 U.S. at 536, 45 S.Ct. at 395.[8] We do not consider whether this requirement was lacking here, as Mr. Ciraolo contends.

The second indispensable factor, which we do hold to have been absent, is that all elements of the contempt must be within the personal knowledge of the judge. Only direct personal knowledge by the judge of the essential facts makes it tolerable to dispense with the usual mode of proof. It is considered acceptable, in the face of an immediate threat to the administration of justice, to forgo proof of what the judge, through his own senses, already knows. In such circumstances, "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense." Cooke v. United States, *supra*, 267 U.S. at 534, 45 S.Ct. at 394. Conversely, where the judge has not directly observed all the facts relevant to a determination of the accused's guilt of contempt, summary proceedings cannot be sustained. Sacher v. United States, 343 U.S. 1, 9, 72 S.Ct. 451, 96 L.Ed. 717 (1952); In re Oliver, *supra*, 333 U.S. at 276–277, 68 S.Ct. 499; In re Savin, 131 U.S. 267, 277, 9 S.Ct. 699, 33 L.Ed. 150 (1889); Ex parte Terry, 128 U.S. 289, 308–310, 9 S.Ct. 77, 32 L.Ed. 405 (1888); *cf.* Panico v. United States, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963); Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269, 276 (1964); Matusow v. United States, 229 F.2d 335, 341–342 (5th Cir. 1956); Paul v. United States, 36 F.2d 639 (9th Cir. 1929).

As noted, Mr. Ciraolo was found guilty of contempt not simply for filing an affidavit, but because the judge inferred from the circumstances that Mr. Ciraolo (1) willfully filed a false affidavit (2) for an improper purpose.

It appears from the transcript of the contempt proceedings that Judge Kron-

---

underlying the conviction when it stated: "In our view the trial court's conclusion is amply warranted that petitioner did not in good faith believe the truth of his assertions made in the affidavit but instead used the affidavit and disqualification motion simply as one of a number of sequential efforts to obtain continuances." In re Ciraolo, *supra*, 74 Cal.Rptr. at 866, 450 P.2d at 242.

7. *See also* Harris v. United States, 382 U.S. 162, 164–165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); Cooke v. United States, 267 U.S. 517, 534, 536, 45 S.Ct. 390 (1925); Ex parte Terry, 128 U.S. 289, 308–309, 9 S. Ct. 77 (1888); *cf.* In re McConnell, 370 U.S. 230, 234, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962); Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919).

8. *See also* In re Oliver, *supra*, 333 U.S. at 274, 68 S.Ct. 499; 8A J. Moore, Federal Practice ¶ 42.04[2], at 42–23 (2d ed. 1970); *cf.* Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954).

inger drew the inference of knowing use of a false affidavit from two circumstances.

The first was Mr. Newhouse's testimony before Judge Emerson. Judge Kroninger stated that Mr. Newhouse "did not testify that he understood that anything of the sort had been said and did not say that he had told you that that had been said." Because Mr. Newhouse's testimony was not taken before Judge Kroninger, it was not within Judge Kroninger's personal knowledge.[9]

The second circumstance relied upon by Judge Kroninger was that Mr. Ciraolo "did not use the affidavit of Mr. Newhouse, but your own." Judge Kroninger stated, "it's fair to infer that the reason you did not use his affidavit was that you believed you were unable to in that Mr. Newhouse was not prepared to make such a declaration under oath since he knew that was not the fact." Of course Judge Kroninger knew that Mr. Ciraolo had used his own affidavit rather than Mr. Newhouse's, but there was neither testimony nor objective evidence before Judge Kroninger regarding Mr. Newhouse's state of mind.

Judge Kroninger's second basic finding (that Mr. Ciraolo's motive was to delay the trial) was also an inference. It was drawn from a long and complicated series of prior events that need not be detailed here. It is sufficient to say that they included occurrences outside Judge Kroninger's presence and involved third persons whose testimony might well have shed light upon Mr. Ciraolo's motives.

This case is like Cooke v. United States, *supra*, 267 U.S. at 538, 45 S.Ct. 390, In re Oliver, *supra*, 333 U.S. at 276–277, 68 S.Ct. 499, and Matusow v. United States, *supra*, 229 F.2d at 341–342, in which summary proceedings were invalidated because intent and motive of the alleged contemnor were relevant to guilt or punishment and depended upon proof rather than upon the personal knowledge of the judge.[10]

## IV

Appellee contends, however, that Mr. Ciraolo had notice of the charges and an adequate opportunity to defend himself. It is said (1) that after the hearing before Judge Emerson on July 11, Mr. Ciraolo knew that his affidavit was false; (2) that after the colloquy between Judge Kroninger and Mr. Nunes on August 5, Mr. Ciraolo knew that Judge Kroninger was concerned about the affidavit; (3) that Mr. Ciraolo was afforded the opportunity to explain his conduct and to present evidence at the proceeding on August 9; and (4) that Mr. Ciraolo "was offered an opportunity to avoid the necessity of contempt * * * proceedings and [to] put the

9. It will be noted from our earlier summary of Mr. Newhouse's testimony that Judge Kroninger's understanding of it was inaccurate. While Mr. Newhouse did testify that Judge Kroninger had not used the exact words appearing in Mr. Ciraolo's affidavit, he also testified that the words Mr. Ciraolo used reflected the "sense of the proceedings" before Judge Kroninger as imparted to Mr. Ciraolo by Mr. Newhouse.

Mr. Newhouse was not asked precisely what he told Mr. Ciraolo. This is understandable. The issue before Judge Emerson was not Mr. Ciraolo's good faith but whether Judge Kroninger was biased.

10. Appellee cites several cases for the proposition that an attempt to deceive a court by filing an affidavit with knowledge that it is false or with disregard of its truth or falsity is "directly" contemptuous and accordingly subject to summary punishment. United States v. Temple, 349 F.2d 116 (4th Cir. 1965); In re Paris, 4 F.Supp. 878 (S.D.N.Y.1933); United States v. Frank, 53 F.2d 128 (D.N.J. 1931); United States v. Ford, 9 F.2d 990 (D.Mont.1925). In each of these cases, however, there was a hearing. None of them hold that such conduct is summarily punishable. Appellee also cites Fleming v. United States, 279 F. 613 (9th Cir. 1922), for the same proposition. There also an evidentiary hearing was held, albeit tardily. *Id.* at 615. Moreover, the defendant was found in contempt because he filed an affidavit that was both false and in itself contemptuous. As we have noted, Mr. Ciraolo's contempt conviction did not rest upon those grounds.

matter at rest by apologizing to the court and withdrawing the contumacious affidavit from the file."

(1) As we have seen, the conclusions to be drawn from the hearing before Judge Emerson are far from clear. Mr. Newhouse, the only witness, testified that he told Mr. Ciraolo what Mr. Ciraolo repeated in the affidavit and that those words represented the sense of Judge Kroninger's remarks to Mr. Newhouse. Judge Emerson noted the conflict between Mr. Newhouse's testimony and Judge Kroninger's declaration, taken literally, but did not resolve it.

■ (2) Knowledge that Judge Kroninger was concerned about the affidavit is not the equivalent of notice that Mr. Ciraolo was to be charged with contempt on the grounds that he had knowingly filed a false affidavit with the ulterior motive of postponing the trial.

■ (3) Judge Kroninger's offer to permit Mr. Ciraolo to explain his conduct and to present any evidence he might have immediately available did not afford Mr. Ciraolo an adequate opportunity to defend himself. Without notice, he could not be expected to anticipate the charge and prepare a defense. He was not represented by counsel. He had no opportunity to call witnesses in his behalf. He could not examine the witnesses against him. It is not enough that he was simply allowed to offer an explanation of his actions if he wished.

(4) Assuming the relevance of the suggestion that Mr. Ciraolo could have avoided the contempt by apologizing and withdrawing the affidavit, it is not supported by the record. When Mr. Ciraolo appeared before Judge Kroninger on August 9, he was informed that although a prosecution for perjury was appropriate the matter would be disposed of summarily by means of a contempt proceeding. There is nothing in the record of the August 9 proceedings to indicate that Mr. Ciraolo had any choice other than to respond to the contempt charges. The colloquy between Judge Kroninger and Mr. Nunes on August 5 permits the inference that Judge Kroninger wished the affidavit withdrawn, but does not suggest that withdrawal and an apology from Mr. Ciraolo would have ended the matter.

We do not reach Mr. Ciraolo's contention that the contempt charge should have been heard by a judge not personally involved. *See* Ungar v. Serafite, 376 U.S. 575, 583–588, 84 S.Ct. 841 (1964); In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1953); Offutt v. United States, 348 U.S. 11, 75 S. Ct. 11 (1954); Sacher v. United States, *supra*, 343 U.S. at 11–12, 72 S.Ct. 451; Cooke v. United States, *supra*, 267 U.S. at 539, 45 S.Ct. 390. Apart from the rule against unnecessarily deciding constitutional questions, there are sound practical reasons for not reaching this contention now. The parties have dealt with the issue only as it affected Mr. Ciraolo's summary conviction. It may well be that under California law a non-summary contempt proceeding is conducted by a judge other than the one who brought the charges; perhaps for some other reason Judge Kroninger will not hear the case. Moreover, when the California courts decided this issue in the present case they did not have the benefit of the Supreme Court's decision in Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).

Reversed with instructions to grant the writ.