REINHARDT, Circuit Judge,
concurring.
When judges ask for supplemental briefing on an issue, it does not mean, as the dissent mistakenly asserts, that they have decided to reach a particular result. The purpose of requesting briefing in this case is to obtain more information in order to make a more informed and reasoned decision about whether to address an issue and, if so, how the issue should be resolved. Information, speech, and truth do not hurt; they only shed light. That is a fundamental tenet not only of our judicial system but of our democracy. It is possible, however, that in some instances those who do not want to allow speech — or briefs- — have a preordained view of important issues and may, for some reason, not want to discover or even acknowledge what the law or the Constitution requires.
Our dissenting colleague’s assertion that the constitutionality of Internal Revenue Code § 107(2)[1] is “not necessary to a just resolution of the simple issue of statutory interpretation presented to us,” misper-ceives the issue in this case: To what tax deduction is Reverend Warren entitled? Rev. Warren argues that § 107(2) entitles him to a parsonage housing allowance exclusion that would cover all of his actual housing expenditures, whereas the I.R.S. contends that the § 107(2) exclusion is limited to the fair market rental value of his parsonage. If, however, under the Constitution, Rev. Warren is not entitled to any tax deduction at all, because such a deduction would violate the First Amendment, then it is not possible to decide the case on non-constitutional grounds and reach the correct result, let alone achieve the “just resolution” our dissenting colleague purportedly seeks. No ease our colleague can locate, not even the ghost of Justice Frankfurter, could help him avoid this inescapable fact.[2]
A “just resolution” of this case may well mean no deduction for the parson, if the *1121 statute violates the Establishment Clause. See, e.g., Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (striking down a statutory exemption from Texas’s sales tax that applied to periodicals with religious teachings that were published or distributed by a religious faith). In Texas Monthly, the Supreme Court held that:
[WJhen government directs a subsidy exclusively to religious organizations that is not required by the Free Exercise Clause and that either burdens non-beneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion, ... it provides unjustifiable awards of assistance to religious organizations and cannot but convey a message of endorsement to slighted members of the community.
Id. at 15, 109 S.Ct. 890 (internal quotations and alterations omitted). Thus, it is possible that any tax deduction that Rev. Warren receives under § 107(2) would constitute an unconstitutional windfall at the public’s expense.
Contrary to the dissent’s lament, our request for supplemental briefing does not reflect our “disdain in this case to follow [our] own sensible and enduring precedent.” [3] In fact, the majority’s request for *1122 supplemental briefing is wholly consistent with both this court’s precedent as well as Supreme Court precedent. In United States Nat’l Bank v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 445-48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), the Supreme Court held that the District of Columbia Circuit did not abuse its discretion when it sua sponte ordered supplemental briefing on whether a section of the National Bank Act was still good law even though neither party had raised the issue before the district court, in the appellate briefs, or at oral argument. In so holding, the Court stated:
Though the parties did not lock horns over the status of section 92 [of the National Bank Act], they did clash over whether the Comptroller properly relied on section 92 as authority for his ruling, and “[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law,” Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 ... (1991), even where the proper construction is that a law does not govern because it is not in force. “The judicial Power” extends to cases “arising under ... the Laws of the United States,” Art. Ill, § 2, cl. 1, and a court properly asked to construe a law has the constitutional power to determine whether the law exists .... The contrary conclusion would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court on ... dubious constitutional principles.... The Court of Appeals, accordingly, had discretion to consider the validity of section 92, and under the circumstances did not abuse it.... After giving the parties ample opportunity to address the issue, the Court of Appeals acted without any impropriety in refusing to accept what in effect was a stipulation on a question of law.
Id. 446-48, 113 S.Ct. 2173; see also United States v. Alameda Gateway, Ltd., 213 F.3d 1161, 1167 (9th Cir.2000) (“[T]he Supreme Court has recognized that a court of appeals does not abuse its discretion when it raises the validity of a law even when the parties failed to raise the issue in the briefs or before the district court.”). Nor is it at all unprecedented to appoint ami-cus curiae to argue a position not argued by the parties. See, e.g., Dickerson v. United States, 530 U.S. 428, 442 n. 7, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (“Because no party to the underlying litigation argued in favor of § 3501’s constitutionality in this Court, we invited Professor Paul Cassell to assist our deliberations.... ”). What is unprecedented is that a judge objects so vehemently and wrong-headedly to his colleagues’ request for supplemental briefing.
I might remind our dissenting colleague that one of the questions on which our order' requests briefing is whether we should address the constitutional question. Our colleague obviously has a passionate desire that we permit the religious tax deduction, whether constitutional or not. Ultimately, we may reach the conclusion that we should do just that, and that we should not consider the constitutional question here. No one, however, has yet briefed the issue of whether we should address the question, let alone how we should decide the merits. We have asked for amicus briefing (as well as the parties’) for a simple reason. Neither party to the proceeding has the slightest interest in our deciding the constitutional question, because it is in both their interests to retain the I.R.S. exemption and not to have its constitutionality reviewed by the courts. Still, it is not the parties’ wishes alone that govern our constitutional obligations, but *1123 our duties under the law as well. The parties and the court-appointed amicus can play their proper roles by informing us fully of the relevant legal precedent and the relevant legal analyses that must guide us.
I would hope that our colleague will learn someday that when judges seek information, it does not mean that they have pre-judged an issue. In fact, it is far more likely that those who are opposed to being informed about the law have minds that are already closed. All this is aside from the fact that in my previous twenty-one years of service on this court, I have never known of any judge’s filing a formal objection to a colleague’s request for additional briefing, let alone to a request by a majority of his colleagues. It is regrettable that this unfortunate and wholly unnecessary exchange of views must now find its way into the volumes of our published decisions.
For the above reasons, I concur in the order to appoint amicus curiae and for supplemental briefing about whether we should address the constitutionality of I.R.C. § 107(2) and, if so, how that question should be resolved.

. I.R.C. § 107(2) provides that, "[i]n the case of a minister of the gospel, gross income does not include ... the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.” It appears that no similar exemption is afforded any member of any other profession, whether serving a for-profit or non-profit institution, although this is certainly a matter we would expect the parties and the amicus to brief.

. All the cases cited by our dissenting colleague involve circumstances in which the court could properly reach the result it did regardless of the constitutionality of the statute; in which the court construed the statute in such a manner as to avoid any question of constitutionality; or in which it was appropriate for a federal court to abstain from deciding the question until a state court interpreted the statute’s scope. Precisely the opposite *1121 circumstance confronts us here. In the case before us, we cannot abstain from considering questions relating to a federal statute; nor can we apply the federal statute so as to reach the result either of the parties desires regardless of the statute's constitutionality. Here, if the exemption, regardless of the amount, is unconstitutional, the statute on which both parties rely would likely have to be invalidated.

. The dissent relies on two opinions, one authored by Judge Browning and one by me, in support of this statement. While I appreciate Judge Tallman's perceptive comment that Judge Browning and I have authored "sensible and enduring precedent," neither of the opinions he cites is remotely relevant here. Both involve wholly different circumstances than those present in the case before us. The first case, my opinion in Jones v. Bates, 127 F.3d 839, rev’d on other grounds, 131 F.3d 843 (9th Cir.1997) (en banc), discussed a challenge to a state constitutional amendment (Proposition 140) that established term limits for California state legislators. In Jones, we were faced with a substantive constitutional question — whether a state may lawfully adopt lifetime legislative term limits — and a procedural constitutional question — whether the voters were entitled to notice of the proposition's effects on their fundamental rights. Our decision that there was a procedural constitutional violation obviated the need to consider the substantive constitutional question. It was because we were "presented with two separate constitutional questions” and were able to dispose of the case on the more “narrow constitutional question,” that we decided to "abstain from deciding [the broader] constitutional question! ] prematurely.” Id. at 855-56. In Jones, our ruling on one question obviated the need to address the other. In the present case, however, we do not have an independent question that may, standing alone, dispose of the Warrens’ case.
The second indication of our "disdain” for precedent so cleverly uncovered by our colleague is Judge Browning's opinion in Ciraolo v. Madigan, 443 F.2d 314, 321 (9th Cir.1971). In Ciraolo, we reversed a lower court's contempt ruling because of a procedural due process violation. In responding to the defendant’s additional claim that the contempt charge should have been heard by a different judge, the court stated that, "[a]part from the rule against unnecessarily deciding constitutional questions," there was no reason to address the claim because we were already reversing the case on other grounds. Moreover, it was not necessary to anticipate the issue regarding the conduct of a new trial on remand, because it was possible that the same judge would not again hear the case. In other words, in Cirolo, we suggested that we would decide the issue if and when it was necessary to do so. In this case, unlike in Ciraolo, the issue is ripe. The question of Rev. Warren's entitlement to a tax deduction will not disappear regardless of what further events may occur in his case. The constitutional question at issue here looms as large today as it ever will.